# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL KUMMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cv-5313 |
| ) | |
| ILLINOIS CENTRAL RAILROAD ) | Judge Sharon Johnson Coleman |
| COMPANY, an Illinois corporation ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Kummer filed a complaint against his former employer, Illinois Central Railroad Company ("Illinois Central"), alleging it failed to reasonably accommodate his disability and constructively discharged him for discriminatory and retaliatory reasons, violating the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). Illinois Central moves for summary judgment on all claims. The Court grants in part and denies in part the motion.

**Background**

Illinois Central initially hired Kummer in June 2008 and he began working as a Regional Operations Center Coordinator ("ROC Coordinator") in July 2009. Dkt. 113 ¶¶ 7-8[1]. Illinois Central requires 24-hours-a-day coverage of the ROC Coordinator position. *Id.* ¶ 12. Accordingly, an ROC Coordinator works either a day shift, from 6:00 a.m. to 6:00 p.m., or a night shift, from 6:00 p.m to 6:00 am. *Id.* The day-shift responsibilities are different than the night-shift responsibilities, and the night-shift responsibilities are more essential to the department running smoothly. *Id.* ¶ 13. When Illinois Central is short on ROC Coordinators, it will prioritize night shift coverage over staffing the day shift. *Id.* ¶ 16. Prior to 2011, ROC Coordinators had consistent non-rotating shifts and were

---
[1] Paragraph numbers for citations to Dkt. 113 refer to Kummer's "Response to Moving Party's Statement," which begins at page 9 of the document.

assigned either to the day shift or the night shift. Dkt. 117 ¶ 7.[2] But since at least October 2011 when Anne Morehouse became responsible for overseeing and scheduling the ROC Coordinators, assignment to day shifts and night shifts rotated every three months. Dkt. 113 ¶ 18. This rotating shift schedule is reflected in a written job description dated July 2011 which states that the ROC Coordinator position "will require a rotating work schedule." Dkt. 101-3 at 12. Illinois Central asserts, but Kummer disputes, that all ROC Coordinators must work a rotating schedule or productivity and efficiency will decrease. Dkt. 113 ¶ 14.

Kummer was diagnosed with diabetes in 1993. *Id.* ¶ 6. In January 2011, Kummer's physician submitted a letter to Illinois Central recommending that Kummer work only daytime hours "due to his fluctuating blood sugars." *Id.* ¶ 27. Illinois Central approved the day-shift restriction as a temporary accommodation. *Id.* ¶ 28. Kummer then sought and was granted medical leave for complications related to his diabetes from July through December 2011. *Id.* ¶¶ 30-31. Kummer returned to work on December 21, 2011 with the day shift restriction again in place temporarily. *Id.* ¶ 35. Around this time, Kummer had a series of meetings and conversations with Todd Taylor, a member of Illinois Central's Human Resources department ("HR"), to discuss Kummer's work restrictions. *Id.* ¶ 36. Taylor encouraged Kummer to apply for other positions at Illinois Central that only required day shifts, as it was Illinois Central's position that the ROC Coordinator department could not support a permanent day shift for Kummer. *Id.* On March 26, 2012, Taylor and Kummer met to discuss other positions within Illinois Central that could accommodate Kummer's day shift restriction. *Id.* ¶ 39. As a follow up to that conversation, Taylor sent Kummer an email informing him about a vacant position. Dkt. 101-2 at 19.

---

[2] Illinois Central disputes this fact solely on the grounds that it is not supported by the record. But Kummer's testimony that prior to 2011 "the people on nights worked nights, and the people on days worked days" is sufficient to support the proffered fact. Dkt. 113-1 at 34. Because Illinois Central does not offer evidence to controvert Kummer's testimony on this point, Court will consider the fact undisputed. Fed. R. Civ. P. 56 (e)(2).

2

On March 30, Kummer submitted to Illinois Central a medical report wherein Kummer's physician stated that in order to conform to the treatment plan for Kummer's diabetes, Kummer "must work days… until further notice." Dkt. 133 ¶ 40; Dkt. 100 at 33. Kummer's physician also stated that working nights could result in "severe illness, fainting, kidney failure, and heart problems." Dkt. 100 at 32. Illinois Central placed Kummer on medical leave beginning April 2, 2012 because it felt it could no longer support a day shift restriction in the ROC Coordinator department. Dkt. 117 ¶ 19. Kummer was on medical leave for 43 days and returned to work in mid-May, with the day shift restriction temporarily in place again. Dkt. 113 ¶ 43; Dkt. 117 ¶ 20. While Kummer was out on leave, Illinois Central left the day shift that Kummer had previously been working vacant. Dkt. 117 ¶ 20.

When Kummer returned to work, Morehouse asked him to shadow another day-shift ROC Coordinator, Venus Coe, so he could "get up to speed on trip plans," a responsibility of day-shift ROC Coordinators. Dkt. 113 ¶ 43; Dkt. 101-2 at 36. On the second day of Kummer shadowing Coe, Coe emailed Morehouse about Kummer, stating "[t]his is a piece of work in progress." Dkt. 101-2 at 36. Morehouse responded "he's been trained on them before. It shouldn't take him THAT long :)" *Id.* Kummer complained to Morehouse that he had not been trained on trip plans before and that her comment was harassing and made in retaliation for Kummer's requests for reasonable accommodation. Dkt. 113 ¶ 43.

Around this time, Allan Rothwell, another member of HR, asked Kummer to send his resume so that it could be put in front of the hiring managers for two positions that only required day shifts. Dkt. 113 ¶ 44. Kummer informed Rothwell he had identified a third position that only required day shifts for which Kummer believed he was qualified. *Id.* He asked Rothwell if he should apply for that position and Rothwell responded "[m]ost certainly! I believe this fits." Dkt. 101-3 at 39. Kummer provided his resume to HR the next day. *Id.* at 42.

3

On May 30, 2012 Kummer left work during his shift, allegedly to take care of a personal financial matter. Dkt. 113 ¶ 51. The parties dispute whether Kummer obtained the required permission to leave work while on duty. *Id.* ¶¶ 51-53. ROC Superintendent Austin McConnell informed Kummer that he would be held "out of service" while Illinois Central investigated the circumstances surrounding Kummer's decision to leave work. *Id.* ¶ 53. Kummer then told McConnell that he would be resigning from Illinois Central. *Id.* ¶ 54.

**Legal Standard**

Summary judgment is appropriate if the evidence shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment has the "initial responsibility" to show that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), but the Court must view all facts and make all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court may enter summary judgment only if the record as a whole establishes that no reasonable trier-of-fact could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

**Discussion**

*Failure to Accommodate*

To survive Illinois Central's motion for summary judgment on the failure-to-accommodate claim, Kummer must present evidence showing that (1) Kummer is a qualified individual with a disability; (2) Illinois Central was aware of his disability; and (3) Illinois Central failed to reasonably accommodate that disability. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). The ADA "requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)

4

("*Sears I*")(internal quotations omitted). If a trier of fact finds that the employee's disability was not reasonably accommodated, the employer is only liable if it is responsible for the breakdown of the interactive process. *Id.* Illinois Central asserts that Kummer's claim fails for three reasons: he was not a qualified individual with a disability because he could not perform an essential function of his job; Illinois Central reasonably accommodated him; and Kummer was responsible for the breakdown of the interactive process. Because factual disputes exist on all these issues, the court denies summary judgment on the failure-to-accommodate claim.

A "qualified individual" under the ADA is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The parties dispute whether the ability to work nights as a part of a rotating shift was an essential function of the ROC Coordinator position. The Court must consider "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015) (internal quotations omitted). The employer's determination as to what functions are essential is entitled to some deference, but the court must still consider the other factors, which focus on actual workplace practices, both past and present. *Id.* Additionally, if more than one employee holds the same position, each individual employee in that position does not need to be able to perform each function that is essential to the department or team as a whole. *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011).

Here, the written job description of the ROC Coordinator position from July 2011 states that the position "will require a rotating work schedule." Additionally, Morehouse testified that permitting Kummer to work only days would force Illinois Central to hire additional staff or compromise its operations' efficiency and productivity. A reasonable factfinder could therefore

5

conclude that working nights is an essential function of the ROC Coordinator position. But Kummer testified that in 2009 and 2010, some ROC Coordinators worked only nights (including himself) and others worked only days. If believed, this testimony about past work experiences suggests it was not essential that each ROC Coordinator work both days and nights. It is for a jury, not this Court, to weigh and assess this competing evidence.

The same can be said for the evidence regarding whether Illinois Central reasonably accommodated Kummer's disability. In order to accommodate a disabled employee, an employer must "consider making changes in its ordinary work rules, facilities, terms, and conditions in order to *enable a disabled individual to work.*" *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995) (emphasis added). Granting leave may be a reasonable accommodation in certain circumstances. *Basith v. Cook Cty.*, 241 F.3d 919, 932 (7th Cir. 2001). But preventing an employee with a disability from returning to work violates the ADA if the employee can perform his job with a reasonable accommodation that does not cause the employer an undue hardship. *See* "Employer-Provided Leave and the Americans with Disabilities Act" *available at* https://www.eeoc.gov/eeoc/publications/ada-leave.cfm.[3] Furthermore, although it is not always required that the employer provide an employee with his preferred accommodation, "whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request." *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000), *amended* (Apr. 4, 2000); *see also Ekstrand,* 583 F.3d at 977 (absent undue hardship, an employer may be obligated to provide the specifically requested accommodation upon an employee's showing of medical necessity.)

---

[3] EEOC guidelines, while not controlling, "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Karraker v. Rent-A-Ctr., Inc.,* 411 F.3d 831, 835 n.2 (7th Cir. 2005).

Because prior to his resignation Kummer was either working the day shift or out on medical leave, Illinois Central asserts that he was reasonably accommodated at all times. But a factfinder could decide that keeping Kummer on leave rather than permitting him to work the day shift was unreasonable under the circumstances, particularly in light of the fact that Kummer's day shift slot was left vacant while Kummer was out during April and May 2012. Additionally, there is evidence in the record of vacant positions for which Kummer was qualified that did not require night shifts. A reasonable factfinder could determine that Illinois Central failed to reasonably accommodate Kummer by failing offer him those positions.

To survive summary judgment on the question of reassignment, a plaintiff must "adduce evidence that would permit a reasonable factfinder to infer the existence of a vacant and permanent position." *Johns v. Laidlaw Educ. Servs.*, 199 F. App'x 568, 570-71 (7th Cir. 2006). Taylor and Rothwell's emails identifying positions to which Kummer should apply permit the inference that those positions were vacant and that Kummer met the minimum qualifications for them. If a factfinder drew such an inference, Illinois Central could not escape liability by demonstrating that there were candidates more qualified than Kummer available to fill the vacancies. *E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 764 (7th Cir. 2012) (deviating from a best-qualified selection policy is not per se an undue hardship). Nor could it rely on Kummer's alleged failure to apply for the positions. *Feldman v. Olin Corp.*, 692 F.3d 748, 756 (7th Cir. 2012) (plaintiff's alleged failure to bid on vacant positions not dispositive because employers can be required to bypass such procedural requirements). Rather, if there were vacant positions for which Kummer was qualified, the ADA required Illinois Central to *assign* Kummer to those positions absent an undue hardship, not merely encourage him to apply for them. *United Airlines, Inc.*, 693 F.3d at 761.

Finally, Kummer's resignation does not automatically make him the party responsible for the breakdown of the interactive process. *Sears I*, 417 F.3d at 805-06. This Court must examine "the

7

process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *Id.* at 806. "A party that obstructs or delays the interactive process is not acting in good faith." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Again, the record on this point is mixed and does not compel resolution in Illinois Central's favor on summary judgment. Certainly, there is evidence suggesting that Kummer's resignation cut short Illinois Central's good faith efforts to accommodate him. But Illinois Central's determination that a permanent day shift could not be supported and its failure to assign Kummer to available vacant positions could be interpreted by a reasonable factfinder as signs that Illinois Central was not participating in the process in good faith.

*Constructive Discharge Claim*

Kummer also presses claims of discriminatory and retaliatory constructive discharge. In order to prevail, Kummer must show that Illinois Central made his working conditions so intolerable that any reasonable person would have felt compelled to resign. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 (7th Cir. 2000) (*"Sears II"*). The conditions must be "beyond ordinary discrimination"; otherwise an employee is "expected to remain on the job while seeking redress." *Id.* at 441. Kummer alleges the totality of the following circumstances compelled him to resign: (1) Illinois Central refused to reasonably accommodate him; (2) it placed him on involuntary leave when he could have been working the vacant day shift; (3) his supervisor made disparaging and false remarks about him to a co-worker; and (4) he was placed "out of service" based on the allegedly false pretense that he had left work without permission. These conditions cannot reasonably be said to have rendered Kummer's work environment intolerable. Kummer's discriminatory and retaliatory constructive discharge claims therefore fail.

8

**Conclusion**

The Court denies Illinois Central's motion for summary judgment on the reasonable accommodation claim because there is competing evidence that must be weighed by a jury. The Court also finds that no reasonable jury could conclude Kummer's work environment was so intolerable he was forced to resign and therefore grants summary judgment on the constructive discharge claims.

       IT IS SO ORDERED.

                                                                 SHARON JOHNSON COLEMAN
                                                                 United States District Judge

DATED:  July 20, 2016